UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| **George Stewart**, on behalf of himself and others similarly situated, | |
| Plaintiff, | |
| v. | |
| **Texas Tech University Health Sciences Center**; **Lori Rice-Spearman**, in her official capacity as President of Texas Tech University Health Sciences Center; **Steven Lee Berk**, in his official capacity as Dean of the School of Medicine at Texas Tech University Health Sciences Center; **Lindsay Johnson**, in her official capacity as Associate Dean for Admissions and Student Affairs at Texas Tech University Health Sciences Center; **Hollie Stanton**, in her official capacity as Senior Director for Admissions and Student Affairs at Texas Tech University Health Sciences Center; **Jeri Moravcik**, in her official capacity as Director of Admissions at Texas Tech University Health Sciences Center; **University of Texas at Austin**; **Jay Hartzell**, in his official capacity as President of the University of Texas at Austin; **Claudia F. Lucchinetti**, in her official capacity as Dean of Dell Medical School; **Steve Smith**, in his official capacity as Associate Dean of Student Affairs for Dell Medical School; **Joel A. Daboub**, in his official capacity as director of admissions and records at the University of Texas at Austin Dell Medical School; **University of Texas Health Science Center at Houston**; **Giuseppe N. Colasurdo**, in his official capacity as President of the University of Texas | Case No. 5:23-cv-00007 |

Health Science Center at Houston; **John Hancock**, in his official capacity as executive dean of McGovern Medical School at University of Texas Health Science Center at Houston; **Margaret C. McNeese**, in her official capacity as associate dean for admissions and student affairs at the University of Texas Health Science Center Medical School in Houston; **University of Texas Medical Branch at Galveston**; **Charles P. Mouton**, in his official capacity as President ad interim of University of Texas Medical Branch; **Jeffrey Susman**, in his official capacity as Interim Dean of the John Sealy School of Medicine; **Ruth E. Levine**, in her official capacity as Associate Dean of Student Affairs and Admissions at the John Sealy School of Medicine; **Pierre W. Banks**, in his official capacity as Assistant Dean of Admissions and Recruitment the John Sealy School of Medicine; **University of Texas Health Science Center at San Antonio**; **William L. Henrich**, in his official capacity as President of the University of Texas Health Science Center at San Antonio; **Robert A. Hromas**, in his official capacity as Dean of the Long School of Medicine; **Belinda Chapa Gonzalez**, in her official capacity as Director of Admissions and Special Programs Undergraduate Medical Education at the Long School of Medicine; **Chiquita Collins**, in her official capacity as Vice President for Diversity, Equity and Inclusion and Chief Diversity Officer of the University of Texas Health Science Center at San Antonio; **University of Texas Southwestern Medical Center**; **Daniel K. Podolsky**, in his official capacity as President of the University of Texas Southwestern Medical Center; **W. P.**

**Andrew Lee**, in his official capacity as
Dean of the University of Texas
Southwestern Medical School; **Leah
Schouten**, in her official capacity as
Director of Admissions and Recruitment
at University of Texas Southwestern
Medical School,

                    Defendants.

## CLASS-ACTION COMPLAINT

Federal law prohibits universities that accept federal funds from discriminating on account of race or sex. *See* 42 U.S.C. § 2000d (Title VI); 20 U.S.C. § 1681 (Title IX). Medical schools in Texas are flouting these requirements by using race and sex preferences in student admissions—a practice that violates the clear and unequivocal text of Title VI and Title IX, as well as the Equal Protection Clause of the Fourteenth Amendment. The plaintiff brings suit to enjoin these discriminatory practices, and to ensure that the defendants comply with their obligations under federal anti-discrimination laws.

## JURISDICTION AND VENUE

1.     The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2.     Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2). Venue is additionally proper because at least one of the defendants resides in this judicial district and all defendants reside in Texas. *See* 28 U.S.C. § 1391(b)(1).

## PARTIES

3.     Plaintiff George Stewart is a citizen of Texas.

4.     Defendant Texas Tech University Health Sciences Center is located in Lubbock, Texas. It can be served at the Office of General Counsel for the Texas Tech

University System, whose address is: System Administration Building, 1508 Knoxville Avenue, Suite 301, Box 42021, Lubbock, Texas 79409-2021.

5.   Defendant Lori Rice-Spearman is President of Texas Tech University Health Sciences Center. Dr. Rice-Spearman can be served at the Office of General Counsel for the Texas Tech University System, whose address is: System Administration Building, 1508 Knoxville Avenue, Suite 301, Box 42021, Lubbock, Texas 79409-2021. Dr. Rice-Spearman is sued in her official capacity.

6.   Defendant Steven Lee Berk is Dean of the School of Medicine at Texas Tech University Health Sciences Center. Dr. Berk can be served at the Office of General Counsel for the Texas Tech University System, whose address is: System Administration Building, 1508 Knoxville Avenue, Suite 301, Box 42021, Lubbock, Texas 79409-2021. Dr. Berk is sued in his official capacity.

7.   Defendant Lindsay Johnson is Associate Dean for Admissions and Student Affairs at Texas Tech University Health Sciences Center. Ms. Johnson can be served at the Office of General Counsel for the Texas Tech University System, whose address is: System Administration Building, 1508 Knoxville Avenue, Suite 301, Box 42021, Lubbock, Texas 79409-2021. Ms. Johnson is sued in her official capacity.

8.   Defendant Hollie Stanton is Senior Director for Admissions and Student Affairs at Texas Tech University Health Sciences Center. Dr. Stanton can be served at the Office of General Counsel for the Texas Tech University System, whose address is: System Administration Building, 1508 Knoxville Avenue, Suite 301, Box 42021, Lubbock, Texas 79409-2021. Dr. Stanton is sued in her official capacity.

9.   Defendant Jeri Moravcik is Director of Admissions at Texas Tech University Health Sciences Center. Ms. Moravcik can be served at the Office of General Counsel for the Texas Tech University System, whose address is: System Administration Building, 1508 Knoxville Avenue, Suite 301, Box 42021, Lubbock, Texas 79409-2021. Ms. Moravcik is sued in her official capacity.

10. Defendant University of Texas at Austin is located in Austin, Texas. It can be served at the Office of General Counsel for the University of Texas System, whose address is: 210 West 7th Street, Austin, Texas 78701-2982.

11. Jay Hartzell is President of the University of Texas at Austin. Dr. Hartzell can be served at the Office of General Counsel for the University of Texas System, whose address is: 210 West 7th Street, Austin, Texas 78701-2982. Dr. Hartzell is sued in his official capacity.

12. Defendant Claudia F. Lucchinetti is Dean of Dell Medical School. Dr. Lucchinetti can be served at the Office of General Counsel for the University of Texas System, whose address is: 210 West 7th Street, Austin, Texas 78701-2982. Dr. Lucchinetti is sued in her official capacity.

13. Defendant Steve Smith is Associate Dean of Student Affairs for Dell Medical School. Dr. Smith can be served at the Office of General Counsel for the University of Texas System, whose address is: 210 West 7th Street, Austin, Texas 78701-2982. Dr. Smith is sued in his official capacity.

14. Joel A. Daboub is Director of Admissions and Records at the University of Texas at Austin Dell Medical School. Mr. Daboub can be served at the Office of General Counsel for the University of Texas System, whose address is: 210 West 7th Street, Austin, Texas 78701-2982. Mr. Daboub is sued in his official capacity.

15. Defendant University of Texas Health Science Center at Houston is located in Houston, Texas. It can be served at its Office of Legal Affairs, whose address is: 7000 Fannin Street, Houston, Texas 77030.

16. Defendant Giuseppe N. Colasurdo is President of the University of Texas Health Science Center at Houston. Dr. Colasurdo can be served at the Office of Legal Affairs for the University of Texas Health Science Center at Houston, whose address is: 7000 Fannin Street, Houston, Texas 77030. Dr. Colasurdo is sued in his official capacity.

17.   Defendant John Hancock is Executive Dean of the McGovern Medical School at University of Texas Health Science Center at Houston. Dr. Hancock can be served at the Office of Legal Affairs for the University of Texas Health Science Center at Houston, whose address is: 7000 Fannin Street, Houston, Texas 77030. Dr. Hancock is sued in his official capacity.

18.   Defendant Margaret C. McNeese is Associate Dean for Admissions and Student Affairs at the University of Texas Health Science Center Medical School in Houston. Dr. McNeese can be served at the Office of Legal Affairs for the University of Texas Health Science Center at Houston, whose address is: 7000 Fannin Street, Houston, Texas 77030. Dr. McNeese is sued in her official capacity.

19.   Defendant University of Texas Medical Branch at Galveston is located in Galveston, Texas. It can be served at its Office of Legal & Regulatory Affairs, whose address is: 301 University Boulevard, Galveston, Texas 77555.

20.   Defendant Charles P. Mouton is President ad interim of University of Texas Medical Branch. Dr. Mouton can be served at the Office of Legal & Regulatory Affairs for the University of Texas Medical Branch at Galveston, whose address is: 301 University Boulevard, Galveston, Texas 77555. Dr. Mouton is sued in his official capacity.

21.   Defendant Jeffrey Susman is Interim Dean of the John Sealy School of Medicine. Dr. Susman can be served at the Office of Legal & Regulatory Affairs for the University of Texas Medical Branch at Galveston, whose address is: 301 University Boulevard, Galveston, Texas 77555. Dr. Susman is sued in his official capacity.

22.   Defendant Ruth E. Levine is Associate Dean of Student Affairs and Admissions at the John Sealy School of Medicine. Dr. Levine can be served at the Office of Legal & Regulatory Affairs for the University of Texas Medical Branch at Galveston, whose address is: 301 University Boulevard, Galveston, Texas 77555. Dr. Levine is sued in her official capacity.

23.   Defendant Pierre W. Banks is Assistant Dean of Admissions and Recruitment at the John Sealy School of Medicine. Dr. Banks can be served at the Office of Legal & Regulatory Affairs for the University of Texas Medical Branch at Galveston, whose address is: 301 University Boulevard, Galveston, Texas 77555. Dr. Banks is sued in his official capacity.

24.   Defendant University of Texas Health Science Center at San Antonio is located in San Antonio, Texas. It can be served at 7703 Floyd Curl Drive, San Antonio, Texas 78229.

25.   Defendant William L. Henrich is President of the University of Texas Health Science Center at San Antonio. Dr. Henrich can be served at 7703 Floyd Curl Drive, San Antonio, Texas 78229. Dr. Henrich is sued in his official capacity.

26.   Defendant Robert A. Hromas is Dean of the Long School of Medicine. Dr. Hromas can be served at 7703 Floyd Curl Drive, San Antonio, Texas 78229. Dr. Hromas is sued in his official capacity.

27.   Defendant Belinda Chapa Gonzalez is Director of Admissions and Special Programs Undergraduate Medical Education at the Long School of Medicine. Ms. Gonzalez can be served at 7703 Floyd Curl Drive, San Antonio, Texas 78229. Ms. Gonzalez is sued in her official capacity.

28.   Defendant Chiquita Collins is Vice President for Diversity, Equity and Inclusion and Chief Diversity Officer of the University of Texas Health Science Center at San Antonio. Dr. Collins can be served at 7703 Floyd Curl Drive, San Antonio, Texas 78229. Dr. Collins is sued in her official capacity.

29.   Defendant University of Texas Southwestern Medical Center is located in Dallas, Texas. It can be served at its Office of Legal Affairs, which is located at: 5323 Harry Hines Boulevard, Dallas, Texas 7539.

30.   Defendant Daniel K. Podolsky is President of the University of Texas Southwestern Medical Center. Dr. Podolsky can be served at the Office of Legal Affairs for

the University of Texas Southwestern Medical Center, which is located at: 5323 Harry Hines Boulevard, Dallas, Texas 7539. Dr. Podolsky is sued in his official capacity.

31.  Defendant W.P. Andrew Lee is Dean of the University of Texas Southwestern Medical School. Dr. Lee can be served at the Office of Legal Affairs for the University of Texas Southwestern Medical Center, which is located at: 5323 Harry Hines Boulevard, Dallas, Texas 7539. Dr. Lee is sued in his official capacity.

32.  Defendant Leah Schouten is Director of Admissions and Recruitment at University of Texas Southwestern Medical School. Ms. Schouten can be served at the Office of Legal Affairs for the University of Texas Southwestern Medical Center, which is located at: 5323 Harry Hines Boulevard, Dallas, Texas 7539. Ms. Schouten is sued in her official capacity.

## STATEMENT OF FACTS

33.  Each of the defendant medical schools and universities, along with nearly every medical school and university in the United States,[1] discriminates on account of race and sex when admitting students by giving discriminatory preferences to females and non-Asian minorities, and by discriminating against whites, Asians, and men. This practice, popularly known as "affirmative action," allows applicants with inferior academic credentials to obtain admission at the expense of rejected candidates with better academic credentials.

34.  These race and sex preferences are illegal under the clear and unambiguous text of Title VI and Title IX, which prohibit all forms of race and sex discrimination

---

1.  *See* Mark J. Perry, *New Chart Illustrates Graphically the Racial Preferences for Blacks, Hispanics Being Admitted to US Medical Schools*, American Enterprise Institute, available at: https://bit.ly/3Qp0RZQ (last visited on January 10, 2023); *see also* Exhibit 1 (data from the American Association of Medical Colleges showing that the mean GPAs and MCAT scores of black and Hispanic matriculants to U.S. MD-granting medical schools in 2022–23 were significantly lower than the mean GPAs and MCAT scores of white and Asian matriculants).

at medical schools and universities that receive federal funds and make no exception for diversity-based affirmative-action programs.

35.   They also violate 42 U.S.C. § 1981, which prohibits racial discrimination in contracting and makes no exception for diversity-based affirmative-action programs.

36.   Plaintiff George Stewart grew up in Texas with the desire to study science, become a physician and serve others with his gifting. He made the sacrifices necessary to excel as a student from an early age and thereafter, graduating from high school with a 4.39/4.0 GPA and from college at the University of Texas at Austin with a 3.96/4.0 unaudited GPA in Biology while also volunteering with various relief and ministry organizations. He worked, interned and volunteered in medical facilities at MD Anderson Cancer Center in Houston, Neofluidics Laboratory in San Diego, and Baylor University Medical Center in Dallas. He also scored a 511 on his MCAT. He believed he would be a good candidate for the Texas medical schools and for two years applied to medical schools hoping to fulfill his dream and calling to become a physician. Unfortunately, he was denied this opportunity while over 450 lesser qualified minority students, ranging as low as a GPA of 2.82 or an MCAT of 495, were offered admission. The schools to which Mr. Stewart applied included: Texas Tech University Health Sciences Center; Dell Medical School at the University of Texas at Austin; McGovern Medical School at the University of Texas Health Science Center at Houston; John Sealy School of Medicine at the University of Texas Medical Branch at Galveston; Long School of Medicine at the University of Texas Health Science Center at San Antonio; and University of Texas Southwestern Medical Center.

37.   After his rejections, Mr. Stewart obtained the admissions data for each of the six medical schools through an open-records request, which revealed the race, sex, grade-point average, and MCAT score of every applicant in the 2021–2022 cycle.

38.   The data reveal that the median and mean grade-point averages and MCAT scores of admitted black and Hispanic students are significantly lower than the grade-point averages and MCAT scores of admitted white and Asian students.

39.   At UT-Austin (Dell), for example, the 75% percentile MCAT score for an admitted black student was well below the 25% percentile MCAT score for an admitted white or Asian student:



MCAT score by race.  Boxes represent the inner-quartile-range (25th to 75th quantiles), and the solid black line represents the median.

40.   The data from UT-Austin (Dell) also show a statistically significant relationship between a positive admissions decision and an applicant's status as a female, black, or Hispanic individual.

41.   The data from Texas Tech also reveal that blacks and Hispanics are admitted with much lower MCAT scores than whites or Asians, and that women are admitted with lower MCAT scores than men:





42.   The data from UT-Houston (McGovern) reveal the same pattern: blacks and Hispanics getting admitted with lower MCAT scores than whites and Asians, and

a statistically significant relationship between black or Hispanic status and a positive admissions decision:



43.   The McGovern data also show that admitted female students have lower MCAT scores than admitted male students:



44.   At UT Galveston Medical Branch, blacks and Hispanics are likewise admitted with much lower MCAT scores than whites or Asians, and women are admitted with lower MCAT scores than men:



45.   The data from UT Galveston Medical Branch show a statistically significant relationship between a positive admissions decision and an applicant's status as a female, black, or Hispanic individual.

46.   The same is true at UT San Antonio (Long):



47.   And likewise at UT Southwestern Medical School:





48.   The data demonstrate that each of the defendant medical schools is providing admissions preferences to female, black, and Hispanic applicants while unlawfully discriminating against whites, Asians, and men in admissions decisions.

49.   In addition to these data, the John Sealy School of Medicine at the University of Texas Medical Branch at Galveston openly admits that it gives admissions preferences to black and Hispanic applicants:

[T]he [admissions committee] will intentionally recruit and select a class whose racial and socioeconomic demographics are representative of Texas residents. Utilizing a holistic approach, the committee will seek to admit qualified underrepresented in medicine (URM) and economically disadvantaged applicants. Based on the ethnographic and socioeconomic makeup of the Houston-Galveston Metropolitan Area, the John Sealy School of Medicine Admissions Committee will support pipeline programs and partnerships explicitly focused on increasing Black/African American, Hispanic/Latino, and economically disadvantaged applicants' matriculation to medical school.

Any applicant whose TMDSAS application Race or Ethnicity is American Indian, Alaska Native, Black, African American, Hispanic, Latino, Hawaiian, or Pacific Islander will be classified as a URM per TMDSAS. Any applicant designated as Disadvantaged A or B on their TMDSAS application will be deemed economically disadvantaged. The designations are based on parental education level and income, household size, residential asset value and descriptors of the applicant's hometown (rural, inner city).

Admissions Policies & Procedures, John Sealy School of Medicine, page 8 (attached as Exhibit 2).

## FACTS RELATED TO STANDING

50.   Mr. Stewart intends to reapply to each of the six defendant medical schools, and he stands "able and ready" to do so. *See Carney v. Adams*, 141 S. Ct. 493, 499–500 (2020); *Gratz v. Bollinger*, 539 U.S. 244, 261 (2003); *Northeast Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993).

51.   But the race and sex preferences that the defendants have established and enforce prevent Mr. Stewart from competing on equal terms with other applicants for admission to these medical schools because Mr. Stewart is a white male. This inflicts injury in fact. *See Gratz*, 539 U.S. at 261; *Jacksonville*, 508 U.S. at 666.

52.   This injury is caused by the defendants' use of race and sex preferences in student admissions, and it will be redressed by a declaratory judgment and injunction

that bars the defendants from considering or discriminating on account of race or sex when admitting students to the medical schools.

## CLASS-ACTION ALLEGATIONS

53.   Mr. Stewart brings this class action under Rule 23(b)(2) of the federal rules of civil procedure.

54.   The class comprises all white and Asian men who stand "able and ready" to apply for admission to any of these six medical schools.

55.   The number of persons in the class makes joinder of the individual class members impractical.

56.   There are questions of law common to the class. All class members stand able and ready to apply for admission to one or more of the six medical schools, yet each will encounter discrimination on account of their race and sex unless the defendants are enjoined from implementing their discriminatory admissions practices. The common legal questions are whether the defendants' discriminatory admissions policies violate Title VI, Title IX, 42 U.S.C. § 1981, or the Equal Protection Clause.

57.   Mr. Stewart's claims are typical of other members of the class. Each class member will face the same type of race and sex discrimination—discrimination in favor of blacks and Hispanics and against whites and Asians, and discrimination in favor of women and against men—when they apply to any of the six medical schools.

58.   Mr. Stewart adequately represents the interests of the class, and he has no interests antagonistic to the class.

59.   A class action is appropriate under Rule 23(b)(2) because the defendants are acting on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## FIRST CLAIM FOR RELIEF—VIOLATIONS OF TITLE VI AND TITLE IX

60.   Each of the defendants is violating Title VI and Title IX by discriminating in favor of female, black, and Hispanic applicants for admission and against whites, Asians, and men.

61.   Each of the six medical schools to which Mr. Stewart intends to apply is a "program or activity" that "receives Federal financial assistance" within the meaning of Title VI and Title IX.

62.   Mr. Stewart therefore seeks declaratory and injunctive relief that prohibits the defendants from considering or discriminating on account of race and sex in any way in student admissions, and that compels the defendants to select applicants for admission in a color-blind and sex-neutral manner.

63.   Mr. Stewart seeks this relief under Title VI, Title IX, 42 U.S.C. § 1983, and any other law that might supply a cause of action for the requested relief.

64.   Mr. Stewart seeks this relief against each of the named defendants, including the institutional defendants.

65.   The text of Title VI makes no exceptions for "compelling state interests," "student-body diversity," or race-based affirmative-action programs. It prohibits *all* forms of racial discrimination at institutions that receive federal funds—regardless of whether that racial discrimination is independently prohibited by the Equal Protection Clause.

66.   The text of Title IX makes no exceptions for "compelling state interests," "student-body diversity," or sex-based affirmative-action programs. It prohibits sex discrimination at educational institutions that receive federal funds, without regard to whether that sex discrimination is independently prohibited by the Equal Protection Clause.

67.   If the Court concludes that *Grutter*'s interpretation of the Equal Protection Clause should somehow control the interpretation of Title VI and Title IX, the defendants' affirmative-action programs are impermissible even under *Grutter* because: (1) They are not limited in time, *see Grutter v. Bollinger*, 539 U.S. 306, 342 (2003) ("[R]ace-conscious admissions policies must be limited in time"); *id.* at 351 (Thomas, J., concurring in part and dissenting in part) ("I agree with the Court's holding that racial discrimination in higher education admissions will be illegal in 25 years."); (2) The defendants failed to adequately consider race- and sex-neutral alternatives to achieve diversity, *see Grutter*, 539 U.S. 306, 339 (2003) ("Narrow tailoring . . . require[s] serious, good faith consideration of workable race-neutral alternatives that will achieve the diversity the university seeks."); (3) The defendants are using quotas and racial balancing to ensure a minimum number of black and Hispanic matriculants, *see Grutter*, 539 U.S. at 328 ("[A] race-conscious admissions program cannot use a quota system"); *id.* at 330 ("[O]utright racial balancing . . . is patently unconstitutional"); and (4) The defendants' use of race and sex preferences are not narrowly tailored to advance the supposedly "compelling" interest of student-body diversity.

68.   Mr. Stewart also brings suit to seek the overruling of *Grutter* and *Fisher v. University of Texas at Austin*, 579 U.S. 365 (2016), and he respectfully preserves for appeal his claim that *Grutter* and *Fisher* should be overruled.

## SECOND CLAIM FOR RELIEF—VIOLATIONS OF 42 U.S.C. § 1981

69.   42 U.S.C. § 1981(a) guarantees individuals the same right to make and enforce contracts without regard to race. *See* 42 U.S.C. § 1981(a) ("All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens").

70.   42 U.S.C. § 1981(a) protects whites (and Asians) on the same terms that it protects "underrepresented" racial minorities. *See McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 295 (1976) ("[T]he Act was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race.").

71.   The individual defendants are violating 42 U.S.C. § 1981(a) by discriminating in favor of blacks and Hispanics in student admissions, and against whites and Asians.

72.   Mr. Stewart therefore seeks declaratory and injunctive relief that prohibits the individual defendants from considering or discriminating on account of race in any way in student admissions, and that compels the defendants to select applicants for admission in a color-blind and race-neutral manner.

73.   Mr. Stewart seeks this relief under 42 U.S.C. § 1983, as well as the implied right of action that the Supreme Court has recognized to enforce 42 U.S.C. § 1981(a), and any other law that might supply a cause of action for the requested relief. *See Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–60 (1975).

74.   Mr. Stewart seeks this relief only against the individual defendants, and not against the institutional defendants, as 42 U.S.C. § 1981 neither abrogates nor waives a state institution's sovereign immunity from suit. *See Sessions v. Rusk State Hospital,* 648 F.2d 1066 (5th Cir. 1981) ("Section 1981 contains no congressional waiver of the state's eleventh amendment immunity.").

75.   The text of 42 U.S.C. § 1981(a) makes no exceptions for "compelling state interests," "student-body diversity," or race-based affirmative-action programs. It prohibits *all* forms of racial discrimination in contracting—regardless of whether that racial discrimination is independently prohibited by the Equal Protection Clause.

76.    If the Court concludes that *Grutter*'s interpretation of the Equal Protection Clause should somehow control the interpretation of 42 U.S.C. § 1981(a), the defendants' affirmative-action programs are impermissible even under *Grutter* because: (1) They are not limited in time, *see Grutter v. Bollinger*, 539 U.S. 306, 342 (2003) ("[R]ace-conscious admissions policies must be limited in time"); *id.* at 351 (Thomas, J., concurring in part and dissenting in part) ("I agree with the Court's holding that racial discrimination in higher education admissions will be illegal in 25 years."); (2) The defendants failed to adequately consider race- and sex-neutral alternatives to achieve diversity, *see Grutter*, 539 U.S. 306, 339 (2003) ("Narrow tailoring . . . require[s] serious, good faith consideration of workable race-neutral alternatives that will achieve the diversity the university seeks."); (3) The defendants are using quotas and racial balancing to ensure a minimum number of black and Hispanic matriculants, *see Grutter*, 539 U.S. at 328 ("[A] race-conscious admissions program cannot use a quota system"); *id.* at 330 ("[O]utright racial balancing . . . is patently unconstitutional"); and (4) The defendants' use of race and sex preferences are not narrowly tailored to advance the supposedly "compelling" interest of student-body diversity.

77.    Mr. Stewart also brings suit to seek the overruling of *Grutter* and *Fisher v. University of Texas at Austin*, 579 U.S. 365 (2016), and he respectfully preserves for appeal his claim that *Grutter* and *Fisher* should be overruled.

## THIRD CLAIM FOR RELIEF—EQUAL PROTECTION CLAUSE

78.    As public institutions, the six medical schools to which Mr. Stewart intends to apply are subject to the commands of the Equal Protection Clause, which prohibits state universities or their components from denying to any person the equal protection of the laws.

79.   The Supreme Court has held that the Equal Protection Clause prohibits race and sex discrimination by state universities in all but the most compelling situations. *See Grutter v. Bollinger*, 539 U.S. 306 (2003); *United States v. Virginia*, 518 U.S. 515, 531 (1996) ("Parties who seek to defend gender-based government action must demonstrate an 'exceedingly persuasive justification' for that action.").

80.   The medical schools' affirmative-action programs are incompatible with *Grutter v. Bollinger*, 539 U.S. 306 (2003), and *Fisher v. University of Texas at Austin*, 579 U.S. 365 (2016), because: (1) They are not limited in time, *see Grutter v. Bollinger*, 539 U.S. 306, 342 (2003) ("[R]ace-conscious admissions policies must be limited in time"); *id.* at 351 (Thomas, J., concurring in part and dissenting in part) ("I agree with the Court's holding that racial discrimination in higher education admissions will be illegal in 25 years."); (2) The defendants failed to adequately consider race- and sex-neutral alternatives to achieve diversity, *see Grutter*, 539 U.S. 306, 339 (2003) ("Narrow tailoring . . . require[s] serious, good faith consideration of workable race-neutral alternatives that will achieve the diversity the university seeks."); (3) The defendants are using quotas and racial balancing to ensure a minimum number of black and Hispanic matriculants, *see Grutter*, 539 U.S. at 328 ("[A] race-conscious admissions program cannot use a quota system"); *id.* at 330 ("[O]utright racial balancing . . . is patently unconstitutional"); and (4) The defendants' use of race and sex preferences are not narrowly tailored to advance the supposedly "compelling" interest of student-body diversity.

81.   Even if the medical schools' affirmative-action programs were consistent with *Grutter* and *Fisher*, they would remain illegal under the text of Title VI, Title IX, and 42 U.S.C. § 1981, which categorically prohibit race and sex discrimination with no caveats or allowances for "compelling interests, "student body diversity," or anything else.

82.   And if the Court somehow concludes that the medical schools' affirmative-action programs are allowable under *Grutter* and *Fisher*, then Mr. Stewart will respectfully seek the overruling or reconsideration of *Grutter* and *Fisher* on appeal.

83.   Mr. Stewart therefore seeks declaratory and injunctive relief that prohibits the defendants from considering or discriminating on account of race and sex in any way in student admissions, and that compels the defendants to select applicants for admission in a color-blind and sex-neutral manner.

84.   Mr. Stewart seeks this relief under 42 U.S.C. § 1983 and any other law that might supply a cause of action for the requested relief.

85.   Mr. Stewart seeks this relief only against the individual defendants, and not against the institutional defendants, as 42 U.S.C. § 1983 authorizes lawsuits only against "persons" and not states or state institutions. *See Will v. Michigan Dep't of Police*, 491 U.S. 58, 64–71 (1989) (a state is not a "person" under 42 U.S.C. § 1983).

## DEMAND FOR RELIEF

86.   Mr. Stewart respectfully requests that the court:

a.   certify the class described in paragraph 54;

b.   declare that each of the defendants is violating Title VI and Title IX by discriminating in favor of women and non-Asian racial minorities in student admissions;

c.   declare that the individual defendants (but not the institutional defendants) are violating 42 U.S.C. § 1981(a) and the Equal Protection Clause by discriminating in favor of women and non-Asian racial minorities in student admissions;

d.   permanently enjoin the defendants from considering race or sex in student admissions;

e.     permanently enjoin the defendants from asking or allowing an appli-
       cant for admission to reveal their race or sex;

f.     enter an award of nominal, compensatory, and punitive damages;

g.     appoint a court monitor to oversee all decisions relating to the de-
       fendants' admission of students to ensure that these decisions are free
       from race and sex discrimination of any sort;

h.     appoint a court monitor to oversee any "diversity office" that may
       exist at any of the institutional defendants to ensure that it does not
       aid or abet violations of the nation's civil-rights laws;

i.     award costs and attorneys' fees;

j.     grant all other relief that the Court deems just, proper, or equitable.

                                     Respectfully submitted.

                                      /s/ Jonathan F. Mitchell
GENE P. HAMILTON                     JONATHAN F. MITCHELL
Virginia Bar No. 80434               Texas Bar No. 24075463
Vice-President and General Counsel   Mitchell Law PLLC
REED D. RUBINSTEIN*                  111 Congress Avenue, Suite 400
D.C. Bar No. 400153                  Austin, Texas 78701
ANDREW J. BLOCK*                     (512) 686-3940 (phone)
Virginia Bar No. 91537               (512) 686-3941 (fax)
NICHOLAS R. BARRY*                   jonathan@mitchell.law
Tennessee Bar No. 031963
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org
reed.rubinstein@aflegal.org          * *pro hac vice* applications
andrew.block@aflegal.org               forthcoming
nicholas.barry@aflegal.org
                                     *Counsel for Plaintiff*
Dated: January 10, 2023              *and Proposed Class*