# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### LUBBOCK DIVISION

| | |
|---|---|
| **George Stewart**, on behalf of himself and others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 5:23-cv-00007-H |
| **Texas Tech University Health Sciences Center**, et al., | |
| Defendants. | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO UNIVERSITY OF TEXAS DEFENDANTS' MOTION TO DISMISS

GENE P. HAMILTON
Virginia Bar No. 80434
Vice-President and General Counsel
REED D. RUBINSTEIN*
D.C. Bar No. 400153
ANDREW J. BLOCK*
Virginia Bar No. 91537
NICHOLAS R. BARRY*
Tennessee Bar No. 031963
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org
reed.rubinstein@aflegal.org
andrew.block@aflegal.org
nicholas.barry@aflegal.org

JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

* admitted *pro hac vice*

*Counsel for Plaintiff and Proposed Class*

# TABLE OF CONTENTS

Table of contents ................................................................................................ i

Table of authorities ............................................................................................ ii

   I.  The repeal of Regents' Rule 40304 does not moot Stewart's demands for prospective relief with regard to his race-discrimination claims ................ 1

   II.  Stewart is not seeking damages against any of the individual defendants, and he is entitled to assert *Ex Parte Young* claims for their alleged violations of federal law .................................................................. 4

   III. Stewart has alleged violations of Title VI, Title IX, section 1981, and the Equal Protection Clause ...................................................................... 7

Conclusion ......................................................................................................... 9

Certificate of service ........................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................6

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .......................................8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .........................6, 8

*City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019) ........................4

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) .............2

*Erickson v. Pardus*, 551 U.S. 89 (2007) ...............................................6

*Ex parte Young*, 209 U.S. 123 (1908) .............................................4, 7

*Freedom From Religion Foundation, Inc. v. Abbott*,
    58 F.4th 824 (5th Cir. 2023) ........................................................2, 3

*Gomez v. Toledo*, 446 U.S. 635 (1980) .................................................5

*Gratz v. Bollinger*, 539 U.S. 244 (2003) ................................................1

*Grutter v. Bollinger*, 539 U.S. 306 (2003) .............................................1

*Hopwood v. Texas*, 78 F.3d 932 (1996) .................................................1

*Jackson v. Wright*, -- F.4th ----, 2023 WL 5992750 (5th Cir.) ....................4, 5, 6, 7

*Manhattan Community Access Corp. v. Halleck*,
    139 S. Ct. 1921 (2019) ................................................................5, 8

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ................9

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard
    College*, 143 S. Ct. 2141 (2023) ......................................................7

*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953) ...........................2

*Valero Terrestrial Corp. v. Paige*, 211 F.3d 112 (4th Cir. 2000) ...............2

*Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*,
    535 U.S. 635 (2002) ......................................................................4

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) .....................4

**Statutes**

42 U.S.C. § 1981 ...................................................................................7

42 U.S.C. § 1983 ...................................................................................9

42 U.S.C. § 2000d ..............................................................................1, 4

42 U.S.C. § 2000d-7(a)(1) ......................................................................4

I.  **The Repeal Of Regents' Rule 40304 Does Not Moot Stewart's Demands For Prospective Relief With Regard To His Race-Discrimination Claims**

The UT defendants claim to have mooted some of Stewart's claims by repealing Regents' Rule 40304. *See* UT Defs.' Br., ECF No. 35, at 6–8.[1] The defendants' mootness argument is unavailing for many reasons.

First, the defendants do not claim and have not shown that they have eliminated the use of racial preferences in student admissions. Their mootness argument hinges entirely on the Board of Regents' recommendation to repeal Regents' Rule 40304, which purported to "authorize" UT institutions to use race and sex preferences "in accordance with" *Grutter v. Bollinger*, 539 U.S. 306 (2003), and *Gratz v. Bollinger*, 539 U.S. 244 (2003). *See* Regents' Rule 40304 (attached as Exhibit 1), available at https://perma.cc/69YS-RJD8.[2] But a repeal of Regents' Rule 40304 does not mean that UT institutions will stop using racial preferences. UT institutions were using racial preferences before Regents' Rule 40303,[3] and they did so in the teeth of federal anti-discrimination laws that prohibited all forms of racial discrimination at institutions that receive federal funds. *See* 42 U.S.C. § 2000d (Title VI). It remains possible for UT institutions to continue using racial preferences despite the repeal of Regents' Rule 40303, just as they used racial preferences before the rule existed. The Board of Regents has not adopted a rule that bans consideration of race, or that forbids application forms to ask about a student's race. And the UT defendants have not produced

---

1. The UT defendants appear to concede that the repeal of Regents' Rule 40304 does not affect Stewart's claims regarding illegal sex discrimination or his claims for damages.

2. The UT defendants did not attach a copy of Regents' Rule 40304 to their brief or provide a link to its text. We have included a copy in Exhibit 1.

3. *See Hopwood v. Texas*, 78 F.3d 932 (1996).

affidavits or evidence showing that each of UT medical schools will stop considering or using race in student admissions.[4]

Second, even if the UT defendants had proven that the repeal of Regents' Rule 40303 would eliminate any consideration of race in student admissions, that still would not moot Stewart's claims because of the repeal is an act of "voluntary cessation." *See United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot."); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) ("[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."). The UT defendants try to get around the voluntary-cessation doctrine by analogizing the repeal of Regents' Rule 40304 to a legislature's decision to repeal a statute, which is generally held to moot whatever constitutional claims a litigant was previously asserting against the erstwhile statutory enactment. *See Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116 (4th Cir. 2000) (Luttig, J.) ("[S]tatutory changes that discontinue a challenged practice are 'usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed.'" (quoting *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994)); *Freedom From Religion Foundation, Inc. v. Abbott*, 58 F.4th 824, 832 (5th Cir. 2023) (collecting authorities). But Stewart is not "challenging" Regents' Rule 40303, and he is not seeking any relief pertaining to that rule. He is not, for example, requesting a remedy that would "set aside" or formally revoke

---

4.  The UT defendants offer only a single declaration from an assistant dean for admissions at the University of Texas Medical Branch's John Sealy School of Medicine, which says that "race is not a consideration for admissions in the 2024 admissions cycle to the medical school or going forward." Banks Decl., ECF No. 35-1 ¶ 7. They provide nothing with respect to the other defendant medical schools.

Regents' Rule 40303,[5] declare the rule unconstitutional or preempted, or enjoin the defendants from enforcing it. *See* Complaint, ECF No. 1, ¶ 86. Stewart is challenging only the behavior and conduct of the named defendants, and the defendants have not shown that the repeal of Regents Rule 40304 will induce them to permanently remove racial considerations from their medical school's admissions process. And even if the defendants had made this showing, a post-filing change in a defendant's behavior is the very definition of "voluntary cessation."

The UT defendants also argue that they should be presumed to act in good faith when repealing Regents' Rule 40304, and that the Court should allow the repeal to moot Stewart's claim notwithstanding the voluntary-cessation doctrine. *See* UT Defs.' Br., ECF No. 35, at 8 (citing *Freedom From Religion Foundation*, 58 F.4th at 833). But the presumption of good faith attaches only to "state actors" who act "as public representatives." *See Freedom From Religion Foundation*, 58 F.4th at 833 ("[W]e presume that state actors, as public representatives, act in good faith."). But officers and employees at public universities are not "public representatives" and are not politically accountable to voters, and the UT defendants cite no authority that extends the good-faith presumption beyond government officials to admissions officers or regents at public universities. In all events, even if the UT defendants could somehow invoke the presumption of good faith, the fact remains that the mere repeal of Regents' Rule 40304 does not prove that racial considerations have been eliminated in student admissions, and the UT defendants have not shown that all future admissions decisions at their medical schools will be colorblind. A live controversy remains.

---

5.  *See* 5 U.S.C. § 706(2)(a) (authorizing reviewing courts to "hold unlawful and set aside" agency action found to be "not in accordance with law").

## II.  STEWART IS NOT SEEKING DAMAGES AGAINST ANY OF THE INDIVIDUAL DEFENDANTS, AND HE IS ENTITLED TO ASSERT EX PARTE YOUNG CLAIMS FOR THEIR ALLEGED VIOLATIONS OF FEDERAL LAW

The UT defendants claim that Stewart cannot sue any of the individual defendants for damages or prospective relief. *See* UT Defs.' Br., ECF No. 35, at 8–12. But Stewart is seeking damages only from the university defendants; he has not sued any individual defendants for damages in their personal capacity.[6] So the citations of cases that bar claims for damages against individuals under Title VI and Title IX are beside the point. *See id.* at 9 ("[I]ndividuals cannot be held liable under Title VI and Title IX."). Stewart is asserting only *Ex parte Young* claims for prospective relief against the individual defendants.

The UT defendants claim that Stewart cannot sue the individual defendants under *Ex parte Young* either. *See id.* at 10 (arguing that Stewart's official-capacity claims are "barred by the Eleventh Amendment"). But Stewart's claims fall squarely within the *Ex parte Young* exception to sovereign immunity. To sue under *Ex parte Young*, a litigant needs only to allege "an ongoing violation of federal law and seek[] relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002). The plaintiff must also sue a defendant who has "some connection with" the enforcement of the disputed statute or policy. *Ex parte Young*, 209 U.S. 123, 157 (1908); *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 534 (2021); *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019); *Jackson v. Wright*, --- F.4th ----, 2023 WL 5992750, *3 (5th Cir.).

---

6.  Congress has abrogated state sovereign immunity for claims brought to enforce Title VI and Title IX. *See* 42 U.S.C. § 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.").

Stewart's complaint easily surmounts these hurdles. He alleges repeated and on-going violations of Title VI, Title X, 42 U.S.C. § 1981, and the Equal Protection Clause. *See* Complaint, ECF No. 1, at ¶¶ 60–85.[7] He is requesting prospective relief, and he is not seeking money damages or retrospective relief from the individual defendants. *See id.* at ¶ 86(b)–(e). And all of the individual defendants are connected in some way to the university's admissions practices. The UT defendants do not deny that the individual defendants have authority over their medical school's admissions office, and they do not deny a "connection" between the individual defendants and the discriminatory admissions practices that Stewart has sued to enjoin.

Instead, the UT defendants insist that Stewart was required to explain how each of the individual defendants "took part in admissions decisions," how they were "responsible for any admissions policies," and "whether they engaged in discrimination." UT Defs.' Br., ECF No. 35, at 10. The defendants are wrong. Sovereign immunity is an affirmative defense, and complaints are not required to anticipate or plead around affirmative defenses. *See Gomez v. Toledo*, 446 U.S. 635, 641 (1980); *Jackson v. Wright*, --- F.4th ----, 2023 WL 5992750, *4 (5th Cir.) ("[S]tate sovereign immunity is an affirmative defense, and plaintiffs are not required to anticipate or plead around affirmative defenses."). And the Fifth Circuit has explicitly rejected the idea that complaints must "allege facts demonstrating a connection" between an *Ex parte Young* defendant and the alleged constitutional violation. *See id.* Unless Stewart has pleaded

---

7. The UT defendants claim that the repeal of Regents' Rule 40304 defeats any possibility of an "ongoing" violation of federal law. *See* UT Defs.' Br., ECF No. 35, at 12. But they do not deny that Stewart's complaint *alleges* an ongoing violation. *See id.* Whether an ongoing violation actually exists is a question to be resolved at summary judgment, not in a motion to dismiss. *See Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1927 (2019) ("Because this case comes to us on a motion to dismiss, we accept the allegations in the complaint as true.").

himself out of court by admitting the elements of a sovereign-immunity defense,[8] the Court cannot dismiss his claims for failing to allege facts showing the precise connection between the individual defendants and the medical schools' admissions policies.[9]

The Fifth Circuit has also held that university officials may be sued for prospective relief under *Ex parte Young* "due to their governing authority over" a university, regardless of whether a litigant accuses them of direct involvement in the allegedly unlawful acts. *See Jackson v. Wright*, --- F.4th ----, 2023 WL 5992750, *3 (5th Cir.). So we are at a loss to understand how UT can insist that Stewart must plead (and eventually prove) that each of the individual defendants was personally involved in the allegedly unlawful admissions decisions. *See* UT Defs.' Br., ECF No. 35, at 10–11. The UT defendants do not cite a single case in which a dean of a college or university president was held to be an improper defendant in an *Ex parte Young* lawsuit seeking relief against the unconstitutional conduct of university officials or employees—and we have not been able to find any such case. Indeed, it would be impossible for Stewart to obtain effective relief under *Ex parte Young* unless the medical schools' overseers were sued, because an injunction that extends only to lower-level university officials (such as the line employees that render decisions on applications) would allow the university to continue the constitutional violations by rearranging the chairs and putting different people in charge of the disputed decisions.

The UT defendants' claim that Stewart has failed to allege "*intentional* discrimination" is also befuddling. *See* UT Defs.' Br., ECF No. 35, at 11 (emphasis in origi-

---

8. The UT defendants do not claim that Stewart has pleaded himself out of court.
9. *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] complaint . . . does not need detailed factual allegations"); *id*. at 570 ("[W]e do not require heightened fact pleading of specifics"); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) ("Specific facts are not necessary"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations").

nal). The complaint specifically alleges conscious and intentional race and sex discrimination on the part of each of the defendant medical schools. *See* Complaint, ECF No. 1, ¶ 33 ("Each of the defendant medical schools and universities, along with nearly every medical school and university in the United States, discriminates on account of race and sex when admitting students by giving discriminatory preferences to females and non-Asian minorities, and by discriminating against whites, Asians, and men. This practice, popularly known as 'affirmative action,' allows applicants with inferior academic credentials to obtain admission at the expense of rejected candidates with better academic credentials."). If the UT defendants are suggesting that the individual defendants cannot be sued for this under *Ex Parte Young* absent allegations of their personal involvement in these intentionally discriminatory acts, then their stance is untenable for the reasons provided in *Jackson v. Wright*, --- F.4th ----, 2023 WL 5992750, *3 (5th Cir.).

## III. Stewart Has Alleged Violations Of Title VI, Title IX, Section 1981, And The Equal Protection Clause

Stewart has alleged that each of the defendants discriminates on account of race and sex in medical-school admissions. *See* Complaint, ECF No. 1, at ¶ 33 ("Each of the defendant medical schools . . . discriminates on account of race and sex when admitting students by giving discriminatory preferences to females and non-Asian minorities, and by discriminating against whites, Asians, and men."). These allegations, if true, violate federal anti-discrimination laws, including Title VI, Title IX, 42 U.S.C. § 1981, and the Equal Protection Clause. The UT defendants do not argue that federal law allows them to give discriminatory preferences to women and non-Asian racial minorities when admitting students, and no such claim could be sustained given the text of the relevant statutes and the Supreme Court's ruling in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 143 S. Ct. 2141 (2023). The

defendants also do not deny that these federal anti-discrimination laws allow victims of illegal discrimination (such as Stewart) to sue for relief.

Yet the UT defendants nonetheless contend that Stewart has *failed* to allege violations of federal law or a claim on which relief may be granted. *See* UT Defs.' Br., ECF No. 35, at 13–15. None of their arguments hold water. Like the Texas Tech defendants, the UT defendants deny that the statistical evidence in Stewart's complaint is sufficient to "support an inference" of intentional race or sex discrimination. *See id*. at 13. But that does not matter, Stewart is not required to prove his allegations in the complaint. *See Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1927 (2019) ("Because this case comes to us on a motion to dismiss, we accept the allegations in the complaint as true."). All Stewart needs to do is *allege* that the defendants intentionally discriminate on account of race or sex in their admissions decisions, and he has done that. *See* Complaint, ECF No. 1, at ¶ 33. The strength of Stewart's statistical evidence is irrelevant at this stage of the litigation. The statistics do, however, refute any claim that Stewart's accusations of race and sex discrimination are "conclusory," and the demonstration of a statistically significant correlation between an applicant's race or sex and their changes for admission is more than enough to satisfy the "plausibility" threshold of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

The UT defendants' claim that Stewart has alleged nothing more than "disparate impact" ignores the requirement that courts treat all factual allegations in a complaint as true when deciding a motion to dismiss. *See* UT Defs.' Br., ECF No. 35, at 14 ("[A]ll the plaintiff does is allege facts that show disparate impact."). Stewart has alleged intentional race and sex discrimination in paragraph 33 of his complaint, and it does not matter whether his accompanying statistical evidence proves the existence of intentional racial discrimination or merely establishes a disparate impact. The time for proof will come later. For now, mere allegations suffice.

Finally, there is nothing to the UT defendants' complaint that Stewart failed to allege a "policy" of sex-based admissions preferences. *See* UT Defs.' Br., ECF No. 35, at 15 ("Stewart has not alleged that *any* of the UT Medical Schools had policies giving gender-based preferences in admissions."). Stewart does not need to allege or show the existence of a "policy" because he is not suing a municipal corporation under 42 U.S.C. § 1983. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978). He needs only to allege that the defendants discriminate on account of sex when making admissions decisions, regardless of whether they do so pursuant to a formally adopted "policy." Stewart has alleged that the defendants give discriminatory preferences to female applications,[10] and that allegation must be accepted as true.

## CONCLUSION

The UT defendants' motion to dismiss should be denied.

Respectfully submitted.

 /s/ Jonathan F. Mitchell 
Gene P. Hamilton                              Jonathan F. Mitchell
Virginia Bar No. 80434                        Texas Bar No. 24075463
Vice-President and General Counsel            Mitchell Law PLLC
Reed D. Rubinstein*                           111 Congress Avenue, Suite 400
D.C. Bar No. 400153                           Austin, Texas 78701
Andrew J. Block*                              (512) 686-3940 (phone)
Virginia Bar No. 91537                        (512) 686-3941 (fax)
Nicholas R. Barry*                            jonathan@mitchell.law
Tennessee Bar No. 031963
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org
reed.rubinstein@aflegal.org
andrew.block@aflegal.org
nicholas.barry@aflegal.org                    * admitted *pro hac vice*

Dated: October 17, 2023                       *Counsel for Plaintiff and Proposed Class*

---

10.   *See* Complaint, ECF No. 1, at ¶ 33.

# CERTIFICATE OF SERVICE

I certify that on October 17, 2023, I served this document through CM/ECF

upon:

Layne E. Kruse
Shauna Johnson Clark
Norton Rose Fulbright LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
(713) 651-5151 (phone)
(713) 651-5246 (fax)
layne.kruse@nortonrosefulbright.com
shauna.clark@nortonrosefulbright.com

*Counsel for the UT Defendants*

Benjamin S. Walton
Assistant Attorney General
General Litigation Division
Post Office Box 12548
Austin, Texas 78711
(512) 463-2120 (phone)
(512) 320-0667 (fax)
benjamin.walton@oag.texas.gov

*Counsel for the Texas Tech Defendants*

           /s/ Jonathan F. Mitchell
           Jonathan F. Mitchell
           *Counsel for Plaintiff and Proposed Class*