UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| **George Stewart,** <br><br> Plaintiff; <br><br> v. <br><br> **Texas Tech University Health Sciences Center, et al.,** <br><br> Defendants. | Case No. 5:23-cv-0007-H |

# THE UNIVERSITY OF TEXAS DEFENDANTS'
# REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Layne E. Kruse
Shauna Johnson Clark
Eliot Fielding Turner
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Telecopier: 713-651-5246
layne.kruse@nortonrosefulbright.com
shauna.clark@nortonrosefulbright.com
eliot.turner@nortonrosefulbright.com

*Attorneys for the University of Texas Defendants*

## TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................................ ii

Introduction ........................................................................................................................... 1

Argument and Authorities ..................................................................................................... 1

    1.    Stewart's race-based discrimination claims are moot, and he failed to plausibly allege that he is likely to be discriminated against because of his race or sex. ............................................................ 1

    2.    Stewart cannot sue the individual UT Defendants under Title VI or Title IX. ................................................................................................ 5

    3.    Stewart's conclusory assertions fail to plausibly allege race- or sex- based discrimination claims under Title VI, Title IX, Section 1981, or the Equal Protection Clause. ........................................ 6

Conclusion .............................................................................................................................. 7

Certificate of Service ............................................................................................................. 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Already, LLC v. Nike, Inc.*,
 568 U.S. 85 (2013) ................................................................................................... 4

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ......................................................................................... 1, 6, 7

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013) ................................................................................................. 2

*Daves v. Dallas Cnt'y*,
 64 F.4th 616 (5th Cir. 2023) (en banc) .................................................................... 4

*Fisher v. Univ. of Tex. at Austin*,
 579 U.S. 365 (2016) ................................................................................................. 3

*Freedom from Religion Found., Inc. v. Mack*,
 4 F.4th 306 (5th Cir. 2021) ...................................................................................... 6

*Grutter v. Bollinger*,
 539 U.S. 306 (2003) ................................................................................................. 3

*Hopwood v. Texas*,
 78 F.3d 932 (5th Cir. 1996) ..................................................................................... 3

*Lowery* v. *Texas A&M Univ.*,
 No. 4:22-cv-03091, 2023 WL 6445788 (S.D. Tex. Sept. 29, 2023) ...................... 4, 5

*Norswrothy v. Houston Indep. Sch. Dist.*,
 70 F.4th 332 (5th Cir. 2023) .................................................................................... 1

*Olivarez v. T-Mobile USA Inc.*,
 997 F.3d 595 (5th Cir. 2001) ................................................................................... 7

*Schelske v. Austin*,
 No. 6:22-CV-049-H, 2023 WL 5986462 (N.D. Tex. Sept. 14, 2023) .................... 4, 5

*Seminole Tribe of Fla. v. Florida*,
 517 U.S. 44 (1996) ................................................................................................... 6

*Sossamon v. Lone Star State of Texas*,
 560 F.3d 316 (5th Cir. 2009) ................................................................................... 5

*Students for Fair Admissions, Inc. v. Presidents & Fellows of Harvard Coll. and
 Students for Fair Admissions, Inc. v. Univ. of N. Carolina et al.*,
 143 S. Ct. 2141 (2023) ............................................................................................. 1

## INTRODUCTION

The Supreme Court and the Fifth Circuit have stressed that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Norswrothy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 337 (5th Cir. 2023). Stewart's response makes clear, however, that his complaint rests on just such an allegation in a single paragraph of his complaint, *see* Doc. 44 at 8 (citing Doc. 1 ¶ 33), which says only that "[e]ach of the defendant medical schools . . . discriminates on account of race and sex when admitting students by giving discriminatory preferences to females and non-Asian minorities." Doc. 1 ¶ 33.

Stewart's response does not identify any non-conclusory allegations in his complaint that make his race and sex discrimination claims plausible. Because a plaintiff must plead "more than a sheer possibility that a defendant has acted unlawfully" and Stewart's "naked assertion[s] devoid of further factual enhancement" are not enough, *Iqbal*, 556 U.S. at 678, this Court should grant the UT Defendants' motion to dismiss.

## ARGUMENT AND AUTHORITIES

1.  **Stewart's race-based discrimination claims are moot, and he failed to plausibly allege that he is likely to be discriminated against because of his race or sex.**

As the UT Defendants explained, after the Supreme Court decided *Students for Fair Admissions, Inc. v. Presidents & Fellows of Harvard Coll. and Students for Fair Admissions, Inc. v. Univ. of N. Carolina et al.,* 143 S. Ct. 2141 (2023) ("*SFFA*"), the UT System's Board of Regents repealed Regents' Rule 40304, which allowed, *but did not require*, system institutions to propose affirmative action plans in limited circumstances and only implement such plans *after* they were found to meet certain standards. *See* Doc. 35 at 6-7. The Board of Regents did so based on its understanding

that the Supreme Court's decision in *SFAA* "prohibit[s] the use of an applicant's race as a factor in student admissions," Doc 35-1 at 5. In other words, UT System institutions, including the UT Defendants, now cannot consider race in admissions, even in the limited circumstances where they were previously allowed to under Rule 40304.

Stewart, however, claims that there is still a "live controversy," despite the Board of Regents' recognition that *SFFA* does not allow UT System institutions to consider "race as a factor in student admissions," Doc. 35-1, and the Regents' repeal of Rule 40304. Stewart claims it "remains *possible* for UT institutions to continue to use racial preferences despite the repeal of Rule 40304." Doc. 44 at 1 (emphasis added).[1] But that highlights another Article III problem for Stewart – in addition to being moot, his claims are not ripe because "allegations of *possible* future injury are not sufficient" to establish injury-in-fact. *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013). Given the Supreme Court's intervening decision in *SFFA* and the Board of Regents' subsequent repeal of Regents' Rule 40304—the only rule that allowed UT System institutions to consider race in admissions—none of the UT System medical schools may lawfully consider race as a factor in the admissions process going forward. Nor has Stewart made any plausible allegations that the UT Defendants are planning to defy the Supreme Court and the Board of Regents by considering race as a factor in the admissions process in the future.

Instead, Stewart suggests that the Court should presume that the UT Defendants will use racial preferences because, according to him, "UT institutions"

---

[1] Stewart claims that UT does not have a rule that "bans consideration of race," but he ignores Regents' Rule 10701, which was amended after *SFAA* and does just that. *See* Doc. 35-1, at 1 ("To the extent provided by applicable law, no person shall be excluded from participation in, denied the benefits of, or subject to discrimination under, any program or activity sponsored or conducted by the University of Texas System or any of the institutions, on the basis of race, color, national origin, ethnicity, religion, sex, age, veteran status, or disability.").

2

previously used racial preferences "in the teeth of federal anti-discrimination laws that prohibited all forms of racial discrimination at institutions that receive federal funds." Doc. 44 at 1 (citing *Hopwood v. Texas*, 78 F.3d 932 (5th Cir. 1996)) (footnote omitted). In other words, Stewart suggests that the UT Defendants cannot be trusted to follow the law in the future because other UT institutions failed to follow it in the past. But Stewart's attempt to paint the UT Defendants as scofflaws confirms just the opposite.

In its 1996 *Hopwood* decision, the Fifth Circuit held that "any consideration of race or ethnicity . . . for the purpose of achieving a diverse student body is not a compelling interest under the Fourteenth Amendment." 78 F.3d at 944. In the wake of *Hopwood*, UT institutions changed their admissions practices to eliminate the consideration of race. *See, e.g.*, *Fisher v. Univ. of Tex. at Austin*, 579 U.S. 365, 371 (2016) (discussing UT Austin's post-*Hopwood* adoption of "a new admissions policy," under which "race was not a consideration"). In 2003, the Supreme Court overruled *Hopwood*, holding that "student body diversity is a compelling state interest that can justify the use of race in university admissions" under both the Equal Protection Clause and Title VI—the "federal anti-discrimination laws" that Stewart now invokes. *Grutter v. Bollinger*, 539 U.S. 306, 325, 343 (2003).

After *Grutter*, some UT institutions again changed their admissions policies to allow limited consideration of race, as *Grutter* expressly permitted. *See, e.g.*, *Fisher*, 579 U.S. at 372-73. Others did not. And in 2016, the Supreme Court reaffirmed *Grutter*'s holding in *Fisher, id.* at 381, which remained good law until the *SFFA* decision four months ago. This history, which reflects UT's consistent compliance with the law despite shifting judicial interpretations, undermines Stewart's suggestion that the UT Defendants cannot be trusted to obey the law.

Stewart next argues that his claims for declaratory and injunctive relief are not moot because, even if the UT Defendants will not consider race in admissions

3

going forward, the repeal of Rule 40304 is an act of "voluntary cessation." Doc. 44 at 2. Stewart is wrong again. As this Court recently observed: "[a]t its core, the voluntary-cessation exception 'evaluates the risk that a defendant is engaging in litigation posturing to avoid judicial review.'" *Schelske v. Austin*, No. 6:22-CV-049-H, 2023 WL 5986462, at *9 (N.D. Tex. Sept. 14, 2023) (quoting *U.S. Navy SEALs 1–26 v. Biden*, 72 F.4th 666, 673 (5th Cir. 2023)). It prevents potential gamesmanship where "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). Stewart's rote invocation of "voluntary cessation" does not even try to raise such concerns, which would be unfounded in any case. *See* Doc. 44 at 2–3.

For one, the Regents, who are not defendants, repealed Rule 40304 not voluntarily, *but in response to the Supreme Court's binding decision in SFFA* prohibiting the consideration of race as a factor in the admissions process. In other words, the Board of Regents acted to ensure that UT System institutions complied with the law after the Court's decision in *SFFA*. That is not "voluntary" cessation. *See, e.g.*, *Daves v. Dallas Cnt'y*, 64 F.4th 616, 634-35 (5th Cir. 2023) (en banc) (holding that a county's change in its bail procedures to comply with recent bail legislation wasn't voluntary cessation); *Lowery* v. *Texas A&M Univ.*, No. 4:22-cv-03091, 2023 WL 6445788, at *6 (S.D. Tex. Sept. 29, 2023) (recognizing that "change compelled by force of law isn't voluntary").

Finally, Stewart claims that the UT Defendants are not entitled to the presumption of good faith accorded to other government officials because, he says, it only applies to "public representatives" who are politically accountable to voters. Doc. 44 at 3. But Stewart's unsupported argument ignores the rationale for presuming that governmental defendants act in good faith, which is that "they are public servants, not self-interested private parties." *Sossamon v. Lone Star State of Texas*,

4

560 F.3d 316, 325 (5th Cir. 2009). Stewart also ignores that the Fifth Circuit and district courts in this circuit have repeatedly applied the good-faith presumption to university officials and other unelected public officials. *See U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666 (5th Cir. 2023) (applying presumption of good faith and finding mootness in action against Navy Secretary); *Lowery*, 2023 WL 6445788, at *6 (presuming good faith of university officials and finding mootness); *Schleske*, 2023 WL 5986462, at *9 (holding that Army Secretary's rescission of vaccine mandates following a change in law was mainly involuntary, and was entitled to a presumption of good faith to the extent it was voluntary).

In short, Stewart fails to plausibly allege that the UT Defendants discriminate based on race, and the Supreme Court's *SFFA* decision and actions taken by the UT Board of Regents moot his claims for prospective relief.

**2. Stewart cannot sue the individual UT Defendants under Title VI or Title IX.**

Stewart's response clarifies that he is not seeking damages claims against any of the individual UT Defendants, but that he still seeks injunctive and declaratory relief against them. Doc. 44 at 4. Stewart tries to dismiss the UT Defendants' argument that the individual UT Defendants cannot be held liable under Title VI or Title IX by saying that the cases the UT Defendants cited only bar claims against individuals for *damages*. But Stewart cites no case allowing a Title VI or Title IX claim to proceed against an individual because it only seeks declaratory or injunctive relief. Indeed, it would make little sense to allow Stewart to seek injunctive and declaratory relief against the individual UT Defendants, given that sovereign immunity does not prevent him from seeking that relief *directly* against the state agencies he has sued under Title VI and Title IX. *See, e.g.*, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 74 (1996) (recognizing that courts should not allow *Ex parte Young* actions against state officials when federal law provides a remedy against the

state itself). Put differently, a plaintiff should not be permitted to seek relief against state officials under *Ex parte Young* when, as here, he can obtain relief against the state.

In any event, all of Stewart's claims for injunctive relief under *Ex parte Young* fail because he has not plausibly alleged an *ongoing* violation of federal law. *Freedom from Religion Found., Inc. v. Mack*, 4 F.4th 306, 311-12 (5th Cir. 2021). As explained above and in the UT Defendants' motion to dismiss, *see* Doc. 35 at 12, his claims for race based-discrimination are moot and he has not made any plausible allegations that the UT Defendants *ever* considered sex in admissions, much less that they are now doing so in violation of federal law. Stewart's claims against the individual UT Defendants should be dismissed.

3. **Stewart's conclusory assertions fail to plausibly allege race- or sex-based discrimination claims under Title VI, Title IX, Section 1981, or the Equal Protection Clause.**

Stewart claims that he has stated a claim for relief based on a single, conclusory allegation that the UT Defendants gave discriminatory preferences to "females and non-Asian minorities." *See* Doc. 44 at 8 (citing Doc. 1 ¶ 33).

Stewart neither addresses nor contests the fact that each of his claims requires him to plead (and later prove) that the defendants *intentionally* discriminated on the basis of race or sex. And intentional discrimination requires more than Stewart has pleaded. Indeed, "purposeful discrimination requires more than intent as volition or intent as awareness of consequences"; rather, "[i]t instead involves a decisionmaker's undertaking a course of action *because of*, not merely in spite of, the action's adverse effects on an identifiable group." *Iqbal*, 556 U.S. at 676-77 (internal quotation marks and citations omitted). Stewart's failure to allege *any* facts about whether the UT Defendants adopted a policy or took any action *because of* its effects on identifiable groups, means that Stewart has failed to "plead sufficient factual matter to show

6

[defendants] adopted and implemented the [admissions] policies . . . for the purpose of discriminating." *Id.* at 677.

The one conclusory allegation of discrimination Stewart cites is not enough to save his claim. Indeed, in *Iqbal*, the Court rejected similarly conclusory allegations as insufficient to state a claim. There, the Court evaluated the plaintiff's allegation that the defendants "knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions of confinement as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest." *Iqbal*, 556 U.S. at 680. But the court found that those "bare assertions" were no more than "the formulaic recitation of the elements of a constitutional discrimination claim" and should be disregarded. *Id.* at 680-81. So too here. *See also Olivarez v. T-Mobile USA Inc.*, 997 F.3d 595, 600-601 (5th Cir. 2001) (finding allegation that defendants "discriminated against [Olivarez] based on [a] disability" conclusory and affirming dismissal of ADA claims).

Stewart failed to allege any policy that the UT Defendants adopted giving preferences in admissions based on race or sex. He has alleged no facts suggesting that the UT Defendants undertook any actions *because of* their effects on whites and Asians or men. In short, there is nothing more in the complaint than Stewart's say-so that defendants discriminated. That is not enough.

## CONCLUSION

For the reasons explained here and in the UT Defendants' brief in support of their motion to dismiss, Stewart's claims should be dismissed.

8

Dated: November 6, 2023　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　*/s/ Layne E. Kruse*
　　　　　　　　　　　　　　　　　　Layne E. Kruse
　　　　　　　　　　　　　　　　　　　　(Texas Bar No. 11742550)
　　　　　　　　　　　　　　　　　　Shauna Johnson Clark
　　　　　　　　　　　　　　　　　　　　(Texas Bar No. 00790977)
　　　　　　　　　　　　　　　　　　Eliot Fielding Turner
　　　　　　　　　　　　　　　　　　　　(Texas Bar No. 24066224)
　　　　　　　　　　　　　　　　　　NORTON ROSE FULBRIGHT US LLP
　　　　　　　　　　　　　　　　　　1301 McKinney, Suite 5100
　　　　　　　　　　　　　　　　　　Houston, Texas 77010
　　　　　　　　　　　　　　　　　　Telephone: 713-651-5151
　　　　　　　　　　　　　　　　　　Telecopier: 713-651-5246
　　　　　　　　　　　　　　　　　　layne.kruse@nortonrosefulbright.com
　　　　　　　　　　　　　　　　　　shauna.clark@nortonrosefulbright.com
　　　　　　　　　　　　　　　　　　eliot.turner@nortonrosefulbright.com

*Attorneys for the University of Texas Defendants*

## CERTIFICATE OF SERVICE

 I certify that on November 6, 2023, I served a copy of this document on all counsel of record by electronic means.

*/s/ Layne Kruse*
Layne Kruse
